FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

12 JUN 15 PM 2: 10

CLERK-ALBUQUERQUE
*an*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ANDREW DIVERSEY,

                 Plaintiff,

v.

DAVID SCHMIDLY, individually and in
his official capacity; RICHARD HOLDER,
individually and in his official capacity;
CHARLES FLEDDERMANN, individually
and in his official capacity; JAMES KOCH,
individually and in his official capacity;
RAYMOND SANCHEZ, individually;
MARTHA BEDARD, individually and
in her official capacity; JACK FORTNER,
individually and in his official capacity,

                 Defendants.

No. *12cv651 SMV/WDS*

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES FOR WILLFUL COPYRIGHT INFRINGEMENT AND REQUEST FOR PERMANENT INJUNCTIVE RELIEF

COMES NOW Plaintiff Andrew Diversey, *pro se*, and for his cause of action against

Defendants states:

### INTRODUCTION

1. This action arises under §§ 106, 411(a), and 501(a) and (b) of the United States

Copyright Act of 1976, as amended, 17 U.S.C. (hereinafter the "Copyright Act").

2. All causes of action alleged in this matter arose in Bernalillo County, New Mexico.

### JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §§ 1331 and 1338(a), this Court has jurisdiction over this action.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(a) because Defendants

reside in this District.

1

## PARTIES

5. Plaintiff Andrew Diversey (hereinafter "Plaintiff"), former Ph.D. Candidate at the University of New Mexico (hereinafter "UNM").

6. Defendant David Schmidly, former President of UNM.

7. Defendant Richard Holder, former Deputy Provost of UNM.

8. Defendant Charles Fleddermann, former Acting Dean of Graduate Studies at UNM.

9. Defendant James Koch, Member of the Board of Regents of UNM.

10. Defendant Raymond Sanchez, former President of the Board of Regents of UNM.

11. Defendant Martha Bedard, Dean of University Libraries at UNM.

12. Defendant Jack Fortner, President of the Board of Regents of UNM.

## CERTIFICATE OF COPYRIGHT REGISTRATION

13. Pursuant to 17 U.S.C. § 411(a) and (b)(1), Plaintiff officially registered the copyright of his dissertation, entitled *Metonymy: A Peircean Semiotic Categorization and Typologization in Relation to Other Tropes and Sign Types*, with the United States Copyright Office on February 22, 2012 and received a *Certificate of Registration* (no. TXu 1-789-285).

## STATUTE OF LIMITATIONS

14. Pursuant to 17 U.S.C. § 507(b), the filing of Plaintiff's complaint is timely.

15. Plaintiff first discovered Defendants' copyright infringement on June 16, 2009.

16. Because Defendants' infringing acts have continued without interruption since June 16, 2009 to the present, they constitute an ongoing infringement.

17. Therefore, Plaintiff's three-year statute of limitations for copyright infringement has not yet begun to accrue.

## FACTS

18. In January of 1997 Plaintiff began the M.A. program in linguistics at UNM and graduated from said program with a 4.0+ GPA two years later in December of 1998.

19. Immediately thereafter in January of 1999 Plaintiff began the Ph.D. program in linguistics at UNM and was promoted to Ph.D. candidacy status four semesters later at the end of the fall of 2000 after having accomplished all of his required doctoral coursework with a 4.0+ GPA and having passed his comprehensive examination upon first attempt.

20.  At the end of his first semester of full-time dissertation hours in the spring of 2001, Plaintiff submitted a substantial and original dissertation proposal to his dissertation committee members, including the director, with the goal of publicly defending it the following semester.

21. Publicly defending a dissertation proposal is required by the Department of Linguistics at UNM before the dissertation writing itself can commence.

22. The defense of Plaintiff's dissertation proposal was delayed, however, for several semesters due to the failure on the part of Larry Gorbet, Dissertation Committee Director, to review and provide timely feedback on said proposal.

23. Reviewing and providing timely feedback on dissertation proposals is one of the required duties of dissertation committee directors at UNM.

24. Despite repeated attempts on Plaintiff's part to remedy the situation, including lodging complaints with both the Department of Linguistics and the Office of Graduate Studies, UNM administrators failed to correct the problem.

25. In October of 2004, Plaintiff was forced under protest to publicly defend his dissertation proposal without having ever received any feedback or guidance from his

dissertation committee director.

26. Immediately after his dissertation proposal defense, Plaintiff began writing the dissertation itself, with the goal of finishing and publicly defending it within at most two to three semesters.

27. Publicly defending a completed dissertation that has been fully reviewed by the committee director and other committee members is a requirement for graduating from the Ph.D. program at UNM.

28. The defense of Plaintiff's dissertation was delayed once again due to the continuing lack of timely and adequate feedback and guidance from the dissertation committee members, especially the director.

29. Reviewing and providing feedback on dissertations is one of the required duties of dissertation committee members at UNM.

30. Under a deadline and increased pressure from UNM administrators, Plaintiff was forced against his will and better judgment to publicly defend his dissertation on May 4, 2007.

31. At the time of its public defense, the dissertation was only partially completed (six of a projected total of twelve chapters) and in rough draft form.

32. The partially completed dissertation had never been fully reviewed or commented upon by Plaintiff's committee members, including the committee director, before the defense.

33. Publicly defending a dissertation that is not complete and fully reviewed by the committee members is a violation of UNM policy.

34. Plaintiff's dissertation committee director, Larry Gorbet, failed to participate in the defense, a fact which was remarked upon afterwards by several attendees.

4

35. It is highly irregular and a violation of UNM policy for a committee director not to participate in a dissertation defense.

36. Despite having passed his dissertation defense, Plaintiff considered the defense meritless.

37. At the end of the dissertation defense on May 4, 2007, Plaintiff's four committee members (Larry Gorbet (director), Nathan Houser (co-director), Joseph Ransdell, and Phyllis Wilcox) completed, signed, and dated the *Report of Examination*, which reported the result of Plaintiff's defense, or "examination", and the evaluation of his dissertation manuscript.

38. Plaintiff's dissertation defense received the highest result of "passed" (the other two possible results in descending order being "conditionally passed" and "failed").

39. Plaintiff's dissertation manuscript received the lowest evaluation of "manuscript must be revised before approval" (the other two possible evaluations in ascending order being "manuscript is approved with only minor editorial corrections" and "manuscript is approved without change").

40. In the event that a dissertation manuscript receives an evaluation of "minor editorial corrections" (and most especially when it receives an evaluation of "revision"), "the director will be responsible for seeing that all necessary corrections are made before the dissertation is submitted to the OGS" (*UNM Catalog 2007-2008*, page 85).

41. Plaintiff's *Report of Examination* was then reviewed and countersigned three days later on May 7, 2007 by Sherman Wilcox, Chair of the Department of Linguistics, who in turn submitted it to the Office of Graduate Studies on May 8, 2007.

42. After Plaintiff's dissertation defense, it was agreed and understood that the committee

members, especially the director, would provide Plaintiff with immediate feedback on those chapters that they had never read and reviewed so Plaintiff could proceed with finishing the second half of the dissertation.

43. Plaintiff's committee members failed to provide Plaintiff with any additional feedback despite Plaintiff's numerous requests.

44. In a last attempt to salvage his Ph.D. program, Plaintiff met with Acting Dean of Graduate Studies, Defendant Charles Fleddermann, in mid November 2007, urging him to direct the committee members, especially the director, to perform their academic duties toward Plaintiff pursuant to UNM policy.

45. At the same time, Plaintiff requested an extension of one semester to properly finish and submit his dissertation once having received feedback from the committee members.

46. Plaintiff made it perfectly clear to Defendant Fleddermann during their meeting that he had no intention of officially submitting his dissertation manuscript in its unfinished, unreviewed, and unedited state, and that he would only agree to do so after the finished manuscript was properly reviewed and edited by the committee members, revised by Plaintiff, and then proofread in its final form by the committee director, as required by UNM.

47. Before a dissertation can be officially submitted at UNM it must be fully reviewed by all dissertation committee members and "carefully proofread" in its final form by the committee director, who must in turn sign the *Certification of Final Form of a Thesis or Dissertation*, affirming that he has indeed fulfilled this important obligation.

48. Reviewing and proofreading a student's dissertation in its final form by the committee members and director is also required at all other universities in New Mexico and

6

throughout the United States.

49. This requirement cannot be waived, for by its very definition a dissertation is a peer-reviewed publication.

50. The dissertation must therefore be fully reviewed and evaluated in its final form by the committee members and director before being officially approved and submitted; otherwise it is illegitimate and thus of no academic value.

51. Defendant Fleddermann failed to direct Plaintiff's dissertation committee members and director to perform their required academic duties toward Plaintiff as concerns his dissertation.

52. Instead, Defendant Fleddermann merely inquired into the readiness of Plaintiff's dissertation manuscript by contacting each committee member, all the while being fully aware that the manuscript was only half finished and in rough draft form.

53. In their respective replies to Defendant Fleddermann, Plaintiff's four committee members, including the director, gave false and misleading information to Defendant Fleddermann regarding the readiness of Plaintiff's dissertation manuscript.

54. On November 21, 2007, Defendant Fleddermann wrote Plaintiff a letter, wherein he stated the following:

> After meeting with you earlier this week I have contacted all the members of your dissertation committee. Each member has responded and all are in agreement that your dissertation as presented at your defense last spring was quite good and only in need of minor editing before submission. One example cited was the need to attach the references to the actual dissertation document. The committee was unanimous in telling me that the required changes are minor.

55. At the time of the writing of Defendant Fleddermann's letter, Plaintiff's four committee members, including the director, had received only seven (of a projected total of

twelve) chapters of Plaintiff's dissertation in rough draft form.

56. None of the four committee members had reviewed and provided feedback on more than a few of the seven chapters.

57. Moreover, the four committee members' written statements to Defendant Fleddermann directly contradicted what the committee members themselves had unanimously reported on Plaintiff's *Report of Examination*, dated May 4, 2007.

58. As Acting Dean of Graduate Studies, Defendant Fleddermann himself had full access to Plaintiff's original *Report of Examination*, which had been in the possession of the Office of Graduate Studies since May 8, 2007.

59. Having failed to carry out a thorough and unbiased investigation of the matter, and having completely ignored Plaintiff's verbal and written statements and evidence, including the *Report of Examination*, Defendant Fleddermann declined to grant Plaintiff the necessary extension so his dissertation manuscript could be properly completed, reviewed, edited, revised, proofread, and submitted according to UNM policy.

60. Despite having only three weeks until the end of the fall semester of 2007, and with no guidance or feedback whatsoever from his committee members, especially the director, Plaintiff produced a rough draft version of the remaining five chapters (over seventy pages) of his dissertation.

61. On December 14, 2007, the deadline imposed by Defendant Fleddermann for the official submission of Plaintiff's dissertation, Plaintiff met under extreme fatigue and duress with his two UNM committee members, Larry Gorbet and Phyllis Wilcox, for the purpose of showing them an unreviewed and unedited copy of his complete dissertation manuscript as proof that he

had done his job by writing the remaining five chapters.

62. During the meeting, Plaintiff explained to his two UNM committee members that he would not be submitting his dissertation manuscript that week, since it had still not been reviewed and edited by the committee members, including the director, and that he needed more time to think over what the best solution would be for its proper submission.

63. In spite of Plaintiff's announced decision, the committee director, Larry Gorbet, went ahead and willingly signed the *Certification of Final Form of a Thesis or Dissertation*, thus officially approving Plaintiff's dissertation manuscript without having ever read and reviewed (let alone "carefully proofread") a single chapter of the manuscript in its final form.

64. Professor Gorbet also instructed Plaintiff to sign off on the same form, which Plaintiff had never read or even seen before, under threat of being denied a Ph.D. degree from UNM.

65. Professor Gorbet then attempted to coerce Plaintiff into submitting the unreviewed and unedited copy of his dissertation manuscript against Plaintiff's will and better judgment.

66. Plaintiff refused to submit his dissertation manuscript because to do so would be to participate in academic fraud.

67. Plaintiff understood that he had an obligation according to UNM policy not to submit his dissertation manuscript until it had actually been fully revised by Plaintiff and carefully proofread by the committee director, thus being "free of grammatical and typing errors" (*UNM Catalog 2006-2007*, page 83).

68. Later that same day on December 14, 2007, Plaintiff's committee director, Larry Gorbet, unilaterally submitted the signed *Certification of Final Form of a Thesis or Dissertation* to the Office of Graduate Studies without Plaintiff's dissertation manuscript accompanying it.

69. In order to be considered official and valid, the *Certification of Final Form of a Thesis or Dissertation* must be accompanied by the student's dissertation manuscript.

70. Despite enormous pressure from UNM administrators, Plaintiff continued to refuse to submit his unedited and unrevised dissertation manuscript to the Office of Graduate Studies or to anyone else at UNM for the remainder of the fall semester of 2007.

71. On Friday December 21, 2007, several days after the fall semester of 2007 had officially ended for all administrative purposes, Plaintiff met for the first time that week with the UNM dissertation coordinator, Doug Weintraub, to explain to him the situation with his dissertation and the problem with his committee members.

72. After signing in at the receptionist desk and writing down the purpose of his visit, Plaintiff provided evidence to Mr. Weintraub that he had done his part in meeting all graduation requirements at UNM, short of submitting the dissertation, but that his four committee members, especially the director, had failed to perform their academic duties toward Plaintiff.

73. Mr. Weintraub expressed serious concern upon being informed that Plaintiff's dissertation had never been reviewed and proofread in its final form by the committee director, Larry Gorbet, before he signed off on the *Certification of Final Form of a Thesis or Dissertation.*

74. Plaintiff stated to Mr. Weintraub that he would never consent to releasing his dissertation manuscript in its unreviewed, unedited, and unrevised state.

75. Plaintiff's preference for resolving the problem was to appeal for an extension of one semester in order to properly finish and submit his dissertation manuscript in final form.

76. Mr. Weintraub discouraged Plaintiff from pursuing this plan, predicting that the extension request would not be approved by UNM administrators, even though it was not

Plaintiff's fault that his dissertation manuscript had never been reviewed and proofread by the committee members and thus was not ready for official submission.

77. Mr. Weintraub then proposed to Plaintiff the alternative solution of having outside scholars of Plaintiff's choice review and provide feedback on Plaintiff's dissertation and of allowing Plaintiff the time to make any and all necessary theoretical and typographical corrections to the dissertation manuscript.

78. Although this was not Plaintiff's preferred means of correcting the problem of his committee members' failure to perform their academic duties toward Plaintiff, he reluctantly agreed to Mr. Weintraub's proposal, seeing no other option.

79. At Mr. Weintraub's request, Plaintiff left two copies of his unreviewed and unedited dissertation manuscript in rough draft form with Mr. Weintraub under the agreement that they would be exchanged for two corrected copies in final form by the end of the winter break.

80. Mr. Weintraub also requested that Plaintiff fill out and sign a ProQuest publishing agreement form using Plaintiff's future legal family name of Diversey, the change to which was pending in state court.

81. Mr. Weintraub then instructed Plaintiff to backdate the ProQuest form December 17, 2007 (instead of December 21, 2007), assuring Plaintiff that this was in accordance with UNM administrative procedure.

82. Backdating academic forms is not in accordance with UNM administrative procedure and renders such forms null and void.

83. Before leaving Mr. Weintraub's office, Plaintiff reiterated again to Mr. Weintraub that the dissertation manuscript copies were being conditionally left with him and that Plaintiff

reserved the right to refuse to officially submit his dissertation if for whatever reason it was not corrected and put in final form.

84. The conditions for submitting the dissertation also included having Plaintiff's future legal family name of Diversey appear on the manuscript as author and copyright holder.

85. Mr. Weintraub fully agreed to Plaintiff's conditions and subsequently scheduled a meeting with Plaintiff for January 8, 2008 in order to discuss the progress made on the revision of Plaintiff's dissertation manuscript.

86. Over the winter break, Plaintiff consulted with two outside experts in his field, who pointed out serious theoretical flaws throughout several key chapters of Plaintiff's dissertation, thus thoroughly compromising the integrity and quality of Plaintiff's work.

87. During that same time, Plaintiff discovered over one hundred grammatical, typographical, and reference errors in his dissertation (and has since then found more than twice that number).

88. As Plaintiff began making the corrections and revisions to his dissertation manuscript, the entire pagination of the manuscript automatically shifted, thus requiring a whole new printout.

89. Becoming increasingly disturbed by the fraudulent approval of his dissertation and by the clandestine procedure of having it reviewed by outside scholars and of having to proofread it himself, Plaintiff met immediately after the holidays on January 2, 2008 with the UNM Deputy Provost, Defendant Richard Holder.

90. During their meeting, Plaintiff explained the entire situation to Defendant Holder, including the fact that Plaintiff's dissertation had been fraudulently approved by his committee

director, Larry Gorbet, thereby violating UNM policy and all national and international academic norms and standards.

91. Defendant Holder responded that he would not be surprised if there was a deep-rooted culture of fraudulently approving dissertations in the Department of Linguistics at UNM.

92. Plaintiff then stressed how disappointed he was with the whole dissertation process at UNM and asked Defendant Holder for his guidance on how best to correct the problem.

93. Defendant Holder advised Plaintiff to request another one-semester extension for the purpose of having his dissertation properly reviewed, edited, and submitted, adding that he saw no reason whatsoever why such a necessary and reasonable request under the circumstances would not be granted.

94. During their scheduled meeting of January 8, 2008, Plaintiff informed Mr. Weintraub of the serious theoretical flaws and excessive number of typographical and other errors discovered in his dissertation manuscript during the winter break and that he expected other reviewers and proofreaders to find additional flaws and errors therein upon further review and proofreading.

95. Mr. Weintraub's immediate reaction was one of irritation, and he proceeded to state that he would not allow any changes to Plaintiff's dissertation manuscript.

96. Plaintiff responded by reiterating to Mr. Weintraub the terms of their original agreement and then requested that both copies of his unreviewed and unedited dissertation manuscript be returned to him.

97. Mr. Weintraub complied with Plaintiff's request by handing over both copies of his unreviewed and unedited dissertation manuscript.

98. Plaintiff then informed Mr. Weintraub of his meeting the previous week with the Deputy Provost, who had advised Plaintiff to request another one-semester extension.

99. Mr. Weintraub abruptly changed his attitude, stating that he now supported the proper revision and submission of Plaintiff's dissertation in accordance with UNM policy.

100. Plaintiff and Mr. Weintraub agreed that this would be the only way to oblige the dissertation committee members, especially the director, to perform their academic duties toward Plaintiff.

101. Another UNM administrator from the Office of Graduate Studies was then invited to briefly join the meeting between Plaintiff and Mr. Weintraub to serve as a witness to the agreed upon course of action.

102. Mr. Weintraub also offered to help Plaintiff with the typographical proofreading of his dissertation manuscript, since no one at UNM had ever proofread it up to that point in time.

103. Concerning theoretical input, Mr. Weintraub admitted that he had no training whatsoever in Plaintiff's field of linguistics in order to qualify as a replacement for the committee members or outside experts.

104. For proofreading purposes only, Mr. Weintraub requested that Plaintiff leave him one copy of his unedited and unrevised dissertation manuscript, which he promised to return to Plaintiff in a week or so after having proofread it.

105. Plaintiff agreed and left one copy of his unreviewed and unedited dissertation manuscript with Mr. Weintraub for proofreading purposes only.

106. Mr. Weintraub then scheduled another meeting with Plaintiff for January 17, 2008 so Plaintiff could retrieve the borrowed copy of his unreviewed and unedited dissertation

manuscript.

107. At the end of that same week, Plaintiff sent a request letter, dated January 8, 2008, to Defendant Fleddermann for a one-semester extension in order to properly revise and submit his dissertation manuscript.

108. One week later on January 16, 2008, Mr. Weintraub emailed Plaintiff to inform him that he had to cancel his scheduled meeting with Plaintiff for January 17, 2008 due to the fact that Defendant Fleddermann had confiscated the copy of Plaintiff's unedited and unrevised dissertation manuscript from Mr. Weintraub's office.

109. Thus Defendant Fleddermann violated assurances given to Plaintiff by Mr. Weintraub that the copy of his unedited and unrevised dissertation manuscript would be returned to Plaintiff on January 17, 2008.

110. In a follow-up telephone conversation that same day, Mr. Weintraub informed Plaintiff that he thought it was Defendant Fleddermann's intention to officially submit the dissertation manuscript in its unedited and unrevised state.

111. In the same conversation, Mr. Weintraub also informed Plaintiff that he had not had sufficient time to make good on his offer to Plaintiff to proofread his unedited and unrevised dissertation manuscript.

112. Plaintiff protested to Mr. Weintraub the confiscation of his unedited and unrevised dissertation manuscript and demanded that it be immediately returned as promised.

113. Mr. Weintraub apologized to Plaintiff and added that there was nothing he could do to oblige Defendant Fleddermann to comply with Plaintiff's demand, since he had no administrative authority over the Acting Dean of Graduate Studies.

114. Mr. Weintraub then recommended that Plaintiff not confront Defendant Fleddermann over the confiscation of his unedited and unrevised dissertation manuscript so as not to jeopardize his chances of being granted a one-semester extension.

115. Plaintiff reluctantly followed Mr. Weintraub's advice and did not initially confront Defendant Fleddermann.

116. Also on January 16, 2008, Plaintiff received a forwarded email message from his dissertation committee co-director, Nathan Houser, addressed to Defendant Fleddermann, wherein Professor Houser admits to Defendant Fleddermann that he had in fact not seen Plaintiff's complete dissertation in its final form before evaluating and signing off on it in late December of 2007.

117. On the following day, January 17, 2008, Plaintiff received a letter via email attachment from Defendant Fleddermann, informing Plaintiff that his request for a one-semester extension had been denied.

118. In his letter to Plaintiff, Defendant Fleddermann failed to acknowledge the fact that Plaintiff's dissertation manuscript had never been reviewed and proofread in its final form by Plaintiff's committee members, including the director, before they approved it, and that the manuscript was therefore unready for official submission.

119. In accordance with the grievance procedure at UNM, Plaintiff immediately sent an appeal letter, dated January 18, 2008, to the Deputy Provost, Defendant Holder.

120. During that same week, Plaintiff received information from UNM administrators at the Office of Graduate Studies and at Zimmerman Library that the copy of his unedited and unrevised dissertation manuscript confiscated by Defendant Fleddermann was in the process of

being sent to ProQuest (the publisher of all dissertations in the United States) for publication without Plaintiff's authorization and in opposition to his protests.

121. Plaintiff immediately contacted the Office of the Provost by telephone and requested to meet with Defendant Holder to discuss the matter.

122. The Office of the Provost refused to schedule a meeting between Plaintiff and Defendant Holder, offering Plaintiff no justifiable reason for the refusal.

123. On February 7, 2008, Defendant Holder wrote Plaintiff, informing him that he had denied his appeal for a one-semester extension, that his dissertation manuscript had been deposited in Zimmerman Library, and that Plaintiff had been conferred a Ph.D. degree.

124. In his letter to Plaintiff, Defendant Holder admitted that he had communicated with just one of Plaintiff's four committee members (namely, the co-director, Nathan Houser) and had merely examined the previous exchange between the committee members and Defendant Fleddermann.

125. Defendant Holder also failed to address in his letter the fact that Plaintiff's dissertation manuscript had never been reviewed and proofread in its final form before being approved and signed off on by the committee members, including the director.

126. Therefore, Defendant Holder, like Defendant Fleddermann before him, neglected to carry out a fair and impartial review of Plaintiff's case by objectively reviewing the evidence and confirming the facts conveyed to him by Plaintiff.

127. Because Defendant Fleddermann had confiscated Plaintiff's unedited and unrevised dissertation manuscript and had submitted it to ProQuest for publication without Plaintiff's authorization and in opposition to his protests, Plaintiff sent Defendant Fleddermann a letter on

February 20, 2008 by certified mail, demanding the immediate and unconditional return of all copies of his dissertation manuscript.

128. In his letter to Defendant Fleddermann, Plaintiff wrote:

I do not authorize the copying, binding, microfilming, cataloging, publication, or distribution of my manuscript in any form and am therefore requesting that all copies of it be immediately and unconditionally returned to me [...].

129. Also on February 20, 2008, Plaintiff contacted ProQuest by telephone and was informed by Molly Hubenschmidt that a copy of Plaintiff's dissertation manuscript had indeed been found among other manuscripts in a shipment from UNM to ProQuest.

130. Ms. Hubenschmidt also confirmed that Plaintiff's dissertation manuscript had been sent to ProQuest by UNM without Plaintiff's authorization and legal signature and that therefore UNM had violated submission rules and regulations.

131. Because of this violation, Ms. Hubenschmidt notified Plaintiff two days later on February 22, 2008 by email that ProQuest would be returning Plaintiff's dissertation manuscript to UNM and sending back the attached documentation to Plaintiff.

132. On March 3, 2008, Defendant Fleddermann responded by letter to Plaintiff, informing him that he would not comply with Plaintiff's request for the immediate and unconditional return of his dissertation manuscript.

133. In his letter to Plaintiff, Defendant Fleddermann justifies his position by stating that he had consulted with University Counsel regarding Plaintiff's request and that University Counsel informed him that "copies of dissertations that are submitted according to UNM degree requirements are retained by the university for the purposes spelled out in our policies".

134. At the time of his consultation with University Counsel, Defendant Fleddermann

18

was fully aware of the following facts concerning Plaintiff's dissertation manuscript:

(i) It had never been read (let alone "carefully proofread") and reviewed in its final form by Plaintiff's dissertation committee members, including the director;

(ii) It had been fraudulently approved by the committee director;

(iii) It was still in an unedited and unrevised state;

(iv) Plaintiff had never submitted a copy of it to UNM for the above reasons; and

(v) Plaintiff had therefore certainly never authorized it to be retained, copied, cataloged, or distributed by UNM in any form or for any purpose.

135. Nowhere in his letter of March 3, 2008 to Plaintiff did Defendant Fleddermann state that he had conveyed any of these known facts to University Counsel.

136. Defendant Fleddermann also failed to acknowledge in the same letter to Plaintiff the fact that he willfully attempted to publish Plaintiff's unreviewed, unedited, unrevised, and unsubmitted dissertation manuscript by sending a copy of it to ProQuest without Plaintiff's authorization and in opposition to his protests.

137. Instead, Defendant Fleddermann erroneously implied in his letter to Plaintiff that it was Plaintiff's fault that the dissertation manuscript had been improperly submitted to ProQuest.

138. During that same week, Plaintiff went in person to the Office of the Provost at UNM and tried a second time to meet with either the Deputy Provost or the Provost.

139. Once again, however, the administrators at the Office of the Provost refused to meet with Plaintiff without giving him a justifiable reason for their refusal.

140. On March 8, 2008, Plaintiff appealed to the UNM President, Defendant David Schmidly, for the immediate and unconditional return of his confiscated dissertation manuscript

and for the rescission of his improperly awarded Ph.D. degree.

141. After having waited for almost two months without receiving a response from Defendant Schmidly (the acceptable response time being three weeks), Plaintiff and a family member met with Robert Burford, UNM Dean of Student Affairs, on April 23, 2008 concerning the intentional mishandling of Plaintiff's dissertation and the delay on the part of the Office of the President in responding to Plaintiff's appeal.

142. During their meeting, Dean Burford examined the correspondence between Plaintiff and Defendants Fleddermann and Holder, and compared said correspondence to other documents and communications provided by Plaintiff, evidencing that Plaintiff's committee members and director had signed off on the dissertation without having first read it.

143. Dean Burford stated to Plaintiff that it was "obvious" to him that Defendants Fleddermann and Holder had chosen to ignore and cover up faculty wrongdoing at the expense of Plaintiff's dissertation and Ph.D. program.

144. Dean Burford also informed Plaintiff that it was Plaintiff's right to take legal action against UNM in the event that the grievance procedure did not afford him adequate relief.

145. Dean Burford then concluded the meeting by offering to contact Defendant Schmidly on Plaintiff's behalf in order to urge the President to speed up his response to Plaintiff's appeal.

146. Defendant Schmidly finally wrote a letter to Plaintiff on April 28, 2008, informing Plaintiff that he had declined to review his appeal.

147. In his letter, Defendant Schmidly failed to respond to Plaintiff's request for the immediate and unconditional return of his confiscated dissertation manuscript and the recession

of his improperly awarded Ph.D. degree.

148. Plaintiff replied to Defendant Schmidly by email on May 1, 2008, demanding that he respond to the merits of Plaintiff's letter.

149. On May 2, 2008, Plaintiff received an email from UNM Associate University Counsel, Anne Murray, on behalf of Defendant Schmidly, requesting a copy of Plaintiff's original March 8, 2008 appeal letter to the President, which Ms. Murray claimed had been misplaced in the interim.

150. Despite Plaintiff's immediate compliance with Ms. Murray's request, Defendant Schmidly failed to ever reply to the merits of Plaintiff's letter of March 8, 2008.

151. On May 2, 2008, Plaintiff appealed to the UNM President of the Board of Regents, Defendant James Koch, for the return of his unreviewed and unedited dissertation manuscript, which had never been officially submitted to UNM, and for the rescission of his improperly awarded Ph.D. degree, which had no academic value.

152. Plaintiff had declined to accept the Ph.D. degree because it had been awarded by UNM in violation of their own catalog policy and in opposition to all national and international academic norms and standards for doctoral programs.

153. Approximately one month later on May 28, 2008, Defendant Koch replied to Plaintiff, informing him that he had declined to review his appeal.

154. Thus Plaintiff's grievance procedure at UNM was terminated without adequate relief.

155. On July 16, 2008, Plaintiff sent Defendant Fleddermann a final letter (copied to Defendants Holder, Schmidly, and Koch, as well as to University Counsel Patrick Apodaca),

demanding the immediate and unconditional return of his confiscated and retained dissertation manuscript and the rescission of his improperly awarded Ph.D. degree.

156. In his letter to Defendant Fleddermann, Plaintiff reiterated what he had stated in his first demand letter of February 20, 2008:

> I do not authorize the copying, binding, microfilming, cataloging, depositing, publication, distribution, lending, or retention of my manuscript in any form or for any purpose.

157. Plaintiff also stated to Defendant Fleddermann that if he did not comply with his demand he would commence legal action against UNM.

158. On July 29, 2008, Defendant Fleddermann replied to Plaintiff, stating that he would not comply with Plaintiff's demand.

159. On November 30, 2008, Plaintiff wrote a third letter to Defendant Schmidly, demanding for the last time that his unlawfully confiscated and retained dissertation manuscript be returned and his improperly awarded Ph.D. degree rescinded.

160. Plaintiff also informed Defendant Schmidly that he had since transferred to another university where he was properly finishing his dissertation and Ph.D. program and that UNM would therefore not receive credit for the dissertation.

161. On December 2, 2008, Plaintiff wrote a mediation request letter to Defendant Schmidly and copied it to the New Mexico Higher Education Department and to the Higher Learning Commission, which accredits UNM.

162. In his letter, Plaintiff proposed to meet and mediate with Defendant Schmidly by way of a mutually agreed upon arbitrator in order to resolve the problem with his dissertation, thereby avoiding a protracted lawsuit against UNM.

163. Plaintiff received a response letter, dated December 8, 2008, on behalf of Defendant

Schmidly from Chief of Staff Breda Bova in which she stated that Defendant Schmidly declined to meet and arbitrate with Plaintiff and that he would not reverse UNM's prior decisions or revisit Plaintiff's request for the return of all copies of his dissertation manuscript and for the rescission of his Ph.D. degree.

164. On February 26, 2009, the General Faculty of UNM gave historic votes of no-confidence to Defendants Schmidly and Koch (as well as to former UNM Vice-President David Harris), resulting in Defendant Koch being replaced soon thereafter by Defendant Raymond Sanchez as President of the Board of Regents.

165. At regular weekly (and often even daily) intervals during the summer and fall of 2008 and during the winter and spring of 2009, Plaintiff checked the UNM library holdings and online catalog system ("Libros") but found no outward evidence that UNM administrators had copied and distributed the confiscated copy of his unreviewed and unedited dissertation manuscript.

166. Then on June 16, 2009, Plaintiff discovered for the first time irrefutable evidence by way of Libros that Defendants had indeed copied, deposited, and cataloged his unreviewed and unedited dissertation manuscript in Zimmerman Library and the Center for Southwest Research and were distributing it to the general public by way of the UNM library lending service.

167. As defined in the Copyright Act, publication is "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending". 17 U.S.C. § 101.

168. UNM had therefore published Plaintiff's dissertation by lending it to the general public without Plaintiff's authorization and in opposition to his numerous written protests.

169. On June 16, 2009 Plaintiff wrote Defendant Martha Bedard, Dean of University Libraries at UNM, requesting that all copies of Plaintiff's unlawfully confiscated dissertation manuscript be immediately uncataloged, deaccessioned, and promptly returned to Plaintiff.

170. In his letter to Defendant Bedard, Plaintiff also stressed that the copying and distribution of his dissertation manuscript without his authorization and against his express will constituted a violation of United States copyright law.

171. While patiently awaiting Defendant Bedard's delayed response during the summer of 2009, Plaintiff contacted Paula Tackett, the Director of the Legislative Council Service of New Mexico, on July 30, 2009, upon the advice of his New Mexico state senator.

172. Ms. Tackett offered to serve as intermediary by requesting that Defendant Sanchez, President of the Board of Regents of UNM, address Plaintiff's grievances.

173. Two and a half months later, Plaintiff finally received a definitive response from Ms. Tackett on October 10, 2009, informing him that Defendant Sanchez had declined to cooperate.

174. More than three months after writing to Defendant Bedard, Plaintiff finally received a reply letter on Defendant Bedard's behalf, dated October 5, 2009, from University Counsel Richard Mertz, stating that UNM would not agree to return Plaintiff's dissertation manuscript.

175. In his letter to Plaintiff, University Counsel Mertz wrote that Plaintiff "provided" his dissertation to Zimmerman Library and that therefore "UNM has certain non-exclusive rights in the dissertation, e.g., an implied license to keep copies of the dissertation at the University Libraries and to catalog the work".

176. University Counsel Mertz's statement was both false and absurd, for at no time had

24

Plaintiff ever officially submitted his dissertation to UNM faculty, administrators, or librarians, nor had Plaintiff ever granted UNM expressly or impliedly any nonexclusive rights to retain, copy, catalog, lend, or otherwise distribute his dissertation manuscript.

177. After exhausting all other avenues available to him, Plaintiff filed a timely complaint against UNM on December 14, 2009 in Second Judicial District Court of Bernalillo County, New Mexico (No. D-202-CV-2009-14715) for academic fraud and breach of contract.

178. This New Mexico state case, which is still active, does not and cannot address the issue of copyright infringement.

179. On February 2, 2010, Plaintiff's former family name of LaVelle was legally changed by court order to Diversey.

180. Because Defendants defiantly continued over two and half years to infringe Plaintiff's dissertation copyright, Plaintiff sent via certified mail a *Notification of Copyright Infringement*, dated February 25, 2012, to Defendants Schmidly, Holder, Fleddermann, Koch, Sanchez, Bedard, and Jack Fortner, President of the Board of Regents at UNM.

181. In his notification letter, Plaintiff demanded that Defendants cease retaining, copying, cataloging, and distributing his dissertation manuscript in any form or for any purpose and that they desist infringing his copyright in the future.

182. Plaintiff also demanded therein that Defendants return all known copies of his dissertation manuscript currently in the possession of UNM within ten days.

183. To date, Defendants have neither replied to Plaintiff's notification letter nor complied with any of his demands.

## COUNT I: WILLFUL COPYRIGHT INFRINGEMENT

184. Pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, Plaintiff's dissertation manuscript remains under full copyright protection.

185. As the initial and only author of his dissertation, Plaintiff qualifies as its sole "copyright owner", which is defined as the owner of "the exclusive rights comprised in a copyright". 17 U.S.C. § 101. See also §§ 102(a)(1), 106, and 201(a).

186. Among those "exclusive rights" are the rights to "reproduce the copyrighted work in copies or phonorecords" and "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending". 17 U.S.C. § 106(1) and (3).

187. Plaintiff never transferred to Defendants, either in whole or in part, his ownership of exclusive copyright as regards his dissertation.

188. Nor did Plaintiff ever grant Defendants, either expressly or impliedly, a nonexclusive license to deposit, retain, copy, catalog, or lend his dissertation manuscript.

189. A nonexclusive license is granted by virtue of the following three conditions having been met:

> (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work.

3 M. B. Nimmer and D. Nimmer, *Nimmer on Copyright* § 10.03[A][7], at 10-55 (2011) [hereinafter *Nimmer*], quoting *I.A.E, Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996).

190. These three conditions for the granting of a nonexclusive license were never met in the relationship between Plaintiff and Defendants.

26

191. Moreover, Plaintiff wrote several letters to Defendants in which he explicitly forbade Defendants from copying and distributing his dissertation manuscript.

192. Even if Plaintiff had granted Defendants a nonexclusive license, Plaintiff would have the unequivocal right to unilaterally revoke that license because no valid consideration of any kind ever changed hands from Defendants to Plaintiff, and according to 3 *Nimmer, supra,* § 10.02[B][5], at 10-28.6 (2011), "nonexclusive licenses are revocable absent consideration".

193. Pursuant to 17 U.S.C. § 107, Defendants do not qualify for fair use exemption, since the copying and distribution of an entire work, in this case a more than two-hundred-page manuscript, without the consent of its copyright owner is a gross violation, both in spirit and in letter, of fair use guidelines.

194. As stated in 4 *Nimmer, supra,* § 13.05[D][1]), at 13-230.12 (2011), "the defense of fair use is never available to immunize copying that results in similarity that is not only substantial, but is indeed virtually complete or almost verbatim."

195. Defendants have no library or archive exemption, since in order to have the legal right to reproduce and distribute an unpublished work the library or archive must currently have a copy of that same work in its collections. 17 U.S.C. § 108(b)(1).

196. There are two ways for a library or archive to make the lawful acquisition of a work, whether published or unpublished: either (i) by purchase, or (ii) by gift.

197. Neither was the case with Plaintiff's dissertation manuscript.

198. By having reproduced and distributed a confiscated copy of Plaintiff's dissertation manuscript without his express or implied authorization and in opposition to his repeated written protests, Defendants have infringed Plaintiff's exclusive rights under the Copyright Act.

199. Therefore, pursuant to 17 U.S.C. § 501(a), Defendants are infringers of Plaintiff's dissertation copyright.

200. Because Defendants knowingly infringed Plaintiff's exclusive rights as the sole copyright owner of his dissertation manuscript, Defendants are willful infringers of Plaintiff's dissertation copyright.

201. Defendants Fleddermann and Holder are primary, or direct, willful copyright infringers, having personally instigated and set in motion the entire infringement process.

202. Defendants Schmidly, Koch, Sanchez, Bedard, and Fortner are at the very least secondary, or contributory, willful copyright infringers, having been made fully aware of the infringement but having repeatedly acquiesced in its continuance.

203. Defendants have all had the administrative authority, as well as the professional and personal obligation, at various stages of the process to stop the copyright infringement of Plaintiff's dissertation but have failed to do so.

204. At all times material to this case, a causal nexus has existed between Defendants and the copyright infringement of Plaintiff's dissertation.

205. Defendants have been given sufficient fair warning by Plaintiff that their past and present infringing acts were and are violations of clearly established federal law.

206. Therefore, Defendants are ineligible for sovereign or qualified immunity.

## COUNT II: PERMANENT INJUNCTION

207. Plaintiff requests a permanent injunction, pursuant to 17 U.S.C. § 502(a) and (b), ordering that all copies of Plaintiff's dissertation manuscript currently in the possession of Defendants, or currently in the possession of any third parties, libraries, archives, or other

locations traceable to Defendants' original reproduction and distribution of said document, be immediately and unconditionally returned to Plaintiff, and that all references to Plaintiff's dissertation be forever removed from UNM library and archive catalogs.

208. Plaintiff also requests a permanent injunction, pursuant to 17 U.S.C. § 502(a) and (b), ordering that Defendants be forever barred henceforth from retaining, copying, cataloging, and distributing Plaintiff's dissertation manuscript in any form or for any purpose.

## DAMAGES AND PRAYER FOR RELIEF

The seven defendants named in this complaint, who are being sued individually and in their official capacities, unlawfully confiscated and converted Plaintiff's unreviewed, unedited, unrevised, and fraudulently approved dissertation manuscript, one which Plaintiff never voluntarily submitted to UNM, and proceeded to commit copyright infringement by copying said document and distributing it to the general public through the UNM library lending service without Plaintiff's express or implied authorization and in opposition to his numerous written protests. Defendants' past and present infringing acts were and are both willful and malicious, having the obvious premeditated design of covering up faculty and administrator wrongdoing and incompetence, of forcing Plaintiff to accept an invalid Ph.D. degree, and of preventing Plaintiff from being able to retrieve his dissertation manuscript in order to successfully finish his doctoral program in timely fashion at a more appropriate and law-abiding academic institution.

Defendants have manifestly demonstrated a reckless and continual disregard for United States copyright law. As a direct and proximate cause of Defendants' willful and malicious acts of copyright infringement, Plaintiff has suffered damages, both personal and professional, including but not limited to the following:

a. Loss of property.

b. Loss of reputation.

c. Loss of education.

d. Loss of income.

WHEREFORE, Plaintiff respectfully prays for a judgment against Defendants as follows:

a. Award of actual damages, pursuant to 17 U.S.C. § 504(a)(1) and (b), caused by Defendants' copying and distribution (thus publication) of Plaintiff's unreviewed and unedited dissertation manuscript in an amount to be determined at trial.

b. Recovery of full costs, pursuant to 17 U.S.C. § 505, incurred by Plaintiff.

c. Permanent injunctive relief.

d. Such other and further relief as the Court deems just and proper.

PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES OF FACT WHICH ARE TRIABLE BY JURY.

Respectfully submitted,

ANDREW DIVERSEY
5919 McKinney Drive NE
Albuquerque, NM 87109
(505) 858-1052
andrew.diversey@gmail.com

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Diversey, Andrew

**DEFENDANTS**
Schmidly, David, et al

**(b)** County of Residence of First Listed Plaintiff **Bernalillo**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Sandoval**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** | | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 362 Personal Injury - Med. Malpractice | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 640 R.R. & Truck | ☒ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 480 Consumer Credit |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 17 U.S.C. §501(a)(b)

Brief description of cause: Willful Copyright Infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Actual Damages Permanent Injunction

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____ DOCKET NUMBER _____

DATE 6/15/12

SIGNATURE OF ATTORNEY OF RECORD _Andrew Diversey_

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____